UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) No. 2:25-CR-63 |
| v. | ) |
| | ) JUDGE CORKER |
| TODD ALLEN TREMBLEY | ) |

**PLEA AGREEMENT**

The United States of America, by the United States Attorney for the Eastern District of Tennessee, and the defendant, TODD ALLEN TREMBLEY, and the defendant's attorney, Jonathan Wood, have agreed upon the following:

1. The defendant will plead guilty to the following count(s) in the indictment:

    a) Count One. Conspiracy to distribute fifty (50) or more grams of methamphetamine, its salts, isomers, and salts of its isomers, a Schedule II controlled substance, in violation of 21 U.S.C. §§ 846 and 841(a)(1), (b)(1)(A).

    The punishment for this offense is as follows. A minimum mandatory 10 years up to life imprisonment, a maximum fine of $10,000,000.00, a minimum of 5 years up to life on supervised release, and a $100 mandatory assessment fee.

2. In consideration of the defendant's guilty plea(s), the United States agrees to move the Court at the time of sentencing to dismiss the remaining count(s) against the defendant in this indictment.

3. The defendant has read the indictment, discussed the charges and possible defenses with defense counsel, and understands the crime(s) charged. Specifically, the elements of the offense(s) are as follows: 1) Two or more persons conspired, or agreed, to distribute methamphetamine; 2) The defendant knowingly and voluntarily joined the conspiracy; 3) The

defendant participated in the conspiracy; and 4) The conspiracy involved at least 50 grams of actual methamphetamine.

    4.    In support of the defendant's guilty plea, the defendant agrees and stipulates to the following facts, which satisfy the offense elements. These are the facts submitted for purposes of the defendant's guilty plea. They do not necessarily constitute all of the facts in the case. Other facts may be relevant to sentencing. Both the defendant and the United States retain the right to present additional facts to the Court to ensure a fair and appropriate sentence in this case.

    a)    In November 2024, investigators from the Drug Enforcement Administration (DEA) and the Sullivan County Sheriff's Office (SCSO) began an investigation into the defendant and co-defendant Amy Michelle Daniels after multiple individuals identified them as distributors of methamphetamine. On November 26, 2024, deputies with the Greene County Sheriff's Office (GCSO) arrested Thomas Freshour after he was found in possession of 494 grams of methamphetamine and five firearms (2:25-CR-9). Freshour was transported to the GCSO where he was read and signed a copy of his *Miranda* rights. Freshour agreed to speak with law enforcement and stated that he obtains large quantities of methamphetamine from the defendant at 5715 Starlight Road Kingsport, Tennessee.

    b)    On April 9, 2025, agents met and debriefed a Confidential Source (CS) regarding a subsequent meeting with the defendant to pay back the defendant and co-defendant Daniels for a "fronted amount" of suspected methamphetamine. The CS stated that they would travel to 5715 Starlight Road Kingsport, Tennessee to meet with the defendant and Daniels to pay back a debt of $25 which was owed from an amount of methamphetamine that was "fronted" to the CS on April 5, 2025. The CS then traveled to 5715 Starlight Road Kingsport, Tennessee. The CS was monitored by the audio/ video device while inside of the residence. During the meeting, the CS was heard paying

2

Case 2:25-cr-00063-DCLC-CRW    Document 20    Filed 09/30/25    Page 2 of 10
PageID #: 74

back the owed drug debt and conversing with both the defendant and Daniels. The CS and Trembley discussed future purchases of methamphetamine while the defendant weighs out an additional amount of methamphetamine which was again "fronted" to the CS. The total weight of the methamphetamine was approximately 38 grams and was turned over to agents by the CS.

        c)      On April 22, 2025, agents met and debriefed the CS regarding a subsequent meeting with the defendant to purchase two ounces of methamphetamine. The CS stated that they would travel to 5715 Starlight Road Kingsport, Tennessee to meet with the defendant and Daniels to purchase two ounces of methamphetamine for $700. The CS was monitored by the audio/ video device while inside of the residence. During the meeting, the CS was heard purchasing the methamphetamine from and conversing with Daniels. The CS and Daniels discussed future purchases of methamphetamine. Daniels discussed several different couriers that she and the defendant have been utilizing to pick up large amounts of methamphetamine. Agents met with the CS at a pre-determined location whereupon the CS relinquished custody of the purchased methamphetamine. The total weight was approximately 68 grams of methamphetamine.

        d)      On April 25, 2025, agents obtained a federal search warrant for 5715 Starlight Road Kingsport, Tennessee, the residence of the defendant and Daniels. Agents utilized the pole camera on the residence for surveillance and the information given by the CS to determine when to execute the search warrant. Investigative leads were established that the defendant received a large amount of methamphetamine, and the search warrant was executed on April 29, 2025, which resulted in the seizure of approximately 2.2 pounds of methamphetamine and 2 handguns from the residence. The firearms were found in close proximity to the methamphetamine in the residence. Both the defendant and Daniels were present at the residence when the search warrant was executed.

3

e) The defendant now admits that he conspired with co-defendant Amy Daniels to distribute fifty grams or more of actual methamphetamine.

5. The defendant is pleading guilty because the defendant is in fact guilty. The defendant understands that, by pleading guilty, the defendant is giving up several rights, including:

   a) the right to plead not guilty;

   b) the right to a speedy and public trial by jury;

   c) the right to assistance of counsel at trial;

   d) the right to be presumed innocent and to have the burden of proof placed on the United States to prove the defendant guilty beyond a reasonable doubt;

   e) the right to confront and cross-examine witnesses against the defendant;

   f) the right to testify on one's own behalf, to present evidence in opposition to the charges, and to compel the attendance of witnesses; and

   g) the right not to testify and to have that choice not used against the defendant.

6. The parties agree that the appropriate disposition of this case would be the following as to each count:

   a) The Court may impose any lawful term(s) of imprisonment, any lawful fine(s), and any lawful term(s) of supervised release up to the statutory maximum(s);

   b) The Court will impose special assessment fees as required by law; and

   c) The Court may order forfeiture as applicable and restitution as appropriate.

No promises have been made by any representative of the United States to the defendant as to what the sentence will be in this case. Any estimates or predictions made to the defendant by defense counsel or any other person regarding any potential sentence in this case are not binding on the

Court and may not be used as a basis to rescind this plea agreement or withdraw the defendant's guilty plea(s). The defendant understands that the sentence in this case will be determined by the Court after it receives the presentence investigation report from the United States Probation Office and any information presented by the parties. The defendant acknowledges that the sentencing determination will be based upon the entire scope of the defendant's criminal conduct, the defendant's criminal history, and pursuant to other factors and guidelines as set forth in the Sentencing Guidelines and the factors set forth in 18 U.S.C. § 3553.

    d) Pursuant to Rule 11(c)(1)(C), the defendant and the United States agree to particular provisions of the Sentencing Guidelines, policy statement, or sentencing factor in this case:

    i) For purposes of this plea agreement, the parties agree that the defendant should be held individually responsible for between 500 grams and 1.5 kilograms of actual methamphetamine.

    ii) For the purposes of this plea agreement, the parties agree that a 2-level enhancement for possessing a firearm under §2D1.1(b)(1) should apply to this defendant. In the event the Court declines to accept this agreement, either party will be free to withdraw from the plea agreement.

*[Handwritten insertion: iii) THE PARTIES AGREE THAT A 2-LEVEL ENHANCEMENT FOR MAINTAINING A PREMISES UNDER § 2D1.1(b)(12) SHOULD NOT APPLY TO THE DEFENDANT.]*

  7. Given the defendant's agreement to plead guilty, the United States will not oppose a two-level reduction for acceptance of responsibility under the provisions of Section 3E1.1(a) of the Sentencing Guidelines. Further, if the defendant's offense level is 16 or greater, and the defendant is awarded the two-level reduction pursuant to Section 3E1.1(a), the United States agrees to move, at or before the time of sentencing, the Court to decrease the offense level by one additional level pursuant to Section 3E1.1(b) of the Sentencing Guidelines. Should the defendant engage in any

5

conduct or make any statements that are inconsistent with accepting responsibility for the defendant's offense(s), including violations of conditions of release or the commission of any additional offense(s) prior to sentencing, the United States will be free to decline to make such motion, to withdraw that motion if already made, and to recommend to the Court that the defendant not receive any reduction for acceptance of responsibility under Section 3E1.1 of the Sentencing Guidelines.

8. The defendant agrees to pay the special assessment in this case prior to sentencing.

9. Financial Obligations. The defendant agrees to pay all fines and/or restitution to the Clerk of Court. The defendant also agrees that the full fine and/or restitution amount(s) shall be considered due and payable immediately. If the defendant cannot pay the full amount immediately and is placed in custody or under the supervision of the Probation Office at any time, the defendant agrees that the Bureau of Prisons and the Probation Office will have the authority to establish payment schedules to ensure payment of the fine and/or restitution. The defendant further agrees to cooperate fully in efforts to collect any financial obligation imposed by the Court by set-off of federal payments, execution on non-exempt property, and any other means the United States deems appropriate. The defendant and counsel also agree that the defendant may be contacted post-judgment regarding the collection of any financial obligation imposed by the Court without notifying the defendant's counsel and outside the presence of the defendant's counsel. In order to facilitate the collection of financial obligations to be imposed with this prosecution, the defendant agrees to disclose fully all assets in which the defendant has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, nominee, or other third party. In furtherance of this agreement, the defendant additionally agrees to the following specific terms and conditions:

a) If so requested by the United States, the defendant will promptly submit a completed financial statement to the U.S. Attorney's Office, in a form it provides and as it directs. The defendant promises that such financial statement and disclosures will be complete, accurate, and truthful.

b) The defendant expressly authorizes the U.S. Attorney's Office to obtain a credit report on the defendant in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court.

c) If so requested by the United States, the defendant will promptly execute authorizations on forms provided by the U.S. Attorney's Office to permit the U.S. Attorney's Office to obtain financial and tax records of the defendant.

10. The defendant voluntarily, knowingly, and intentionally agrees to the following:

a) The defendant will not file a direct appeal of the defendant's conviction(s) or sentence with one exception: The defendant retains the right to appeal a sentence imposed above the sentencing guideline range determined by the Court or above any mandatory minimum sentence deemed applicable by the Court, whichever is greater. The defendant also waives the right to appeal the Court's determination as to whether the defendant's sentence will be consecutive or partially concurrent to any other sentence.

b) The defendant will not file any motions or pleadings pursuant to 28 U.S.C. § 2255 or otherwise collaterally attack the defendant's conviction(s) or sentence, with two exceptions: The defendant retains the right to file a § 2255 motion as to (i) prosecutorial misconduct and (ii) ineffective assistance of counsel.

c) The defendant will not, whether directly or by a representative, request or receive from any department or agency of the United States any records pertaining to the

7

investigation or prosecution of this case, including, without limitation, any records that may be sought under the Freedom of Information Act, 5 U.S.C. Section 552, or the Privacy Act of 1974, 5 U.S.C. Section 552a.

11. The defendant recognizes that pleading guilty may have consequences with respect to the defendant's immigration status if the defendant is not a citizen of the United States. Under federal law, a broad range of crimes are removable offenses, including the offense(s) to which the defendant is pleading guilty. (Indeed, because the defendant is pleading guilty to conspiracy to distribute 50 grams or more of actual methamphetamine removal is presumptively mandatory.) Removal and other immigration consequences are the subject of a separate proceeding, however, and the defendant understands that no one, including his attorney or the Court, can predict to a certainty the effect of the defendant's conviction on immigration status. The defendant nevertheless affirms that the defendant wants to plead guilty regardless of any immigration consequences the plea may entail, even if the consequence is automatic removal from the United States.

12. This plea agreement becomes effective once it is signed by the parties and is not contingent on the defendant's entry of a guilty plea. If the United States violates the terms of this plea agreement, the defendant will have the right to withdraw from this agreement. If the defendant violates the terms of this plea agreement in any way (including but not limited to failing to enter guilty plea(s) as agreed herein, moving to withdraw guilty plea(s) after entry, or by violating any court order or any local, state or federal law pending the resolution of this case), then the United States will have the right to void any or all parts of the agreement and may also enforce whatever parts of the agreement it chooses. In addition, the United States may prosecute the defendant for any and all federal crimes that the defendant committed related to this case, including any charges that were dismissed and any other charges which the United States agreed not to pursue. The

defendant expressly waives any statute of limitations defense and any constitutional or speedy trial or double jeopardy defense to such a prosecution. The defendant also understands that a violation of this plea agreement by the defendant does not entitle the defendant to withdraw the defendant's guilty plea(s) in this case.

13. The United States will file a supplement in this case, as required in every case by the Local Rules of the United States District Court for the Eastern District of Tennessee, even though there may or may not be any additional terms. If additional terms are included in the supplement, they are hereby fully incorporated herein.

14. This plea agreement and supplement constitute the full and complete agreement and understanding between the parties concerning the defendant's guilty plea to the above-referenced charge(s), and there are no other agreements, promises, undertakings, or understandings between the defendant and the United States. The parties understand and agree that the terms of this plea agreement can be modified only in writing signed by all of the parties and that any and all other promises, representations, and statements whether made before, contemporaneous with, or after this agreement, are null and void.

9

|   |   | FRANCIS M. HAMILTON, III |
|---|---|---|
|   |   | UNITED STATES ATTORNEY |

9/30/25
Date

By: _____
ANDREW C. PARKER
Assistant United States Attorney

9-30-25
Date

_____
TODD ALLEN TREMBLEY
Defendant

9-30-25
Date

_____
JONATHAN WOOD
Attorney for the Defendant

10